[No. 25800. Department One. January 8, 1936.]

LOIS SHEA, *Respondent,* v. JOHN OLSON, *Appellant.*[1]

[1]Reported in 53 P. (2d) 615.

144

*Roberts & Skeel, W. R. McKelvy,* and *Clifford M. Langhorne,* for appellant.

*Cheney & Hutcheson, Walter J. Robinson, Jr.,* and *Snively & Bounds,* for respondent.

STEINERT, J.—Plaintiff brought this action to recover damages for injuries sustained by her in an automobile accident. Trial by jury resulted in a verdict

in her favor. Defendant's motions for judgment notwithstanding the verdict and for new trial, respectively, were denied. Judgment on the verdict was entered, and defendant thereupon appealed.

The facts, which are practically without dispute, are as follows: On June 8, 1934, appellant, who was a resident of Tacoma, was attending a convention in Yakima. With him were two other young men from Tacoma. While in Yakima, appellant happened to meet respondent, whom he had known for several years. In the course of their conversation on that occasion, appellant and respondent arranged to make up a party to attend a dance the following night. At about 9:30 the next evening, appellant called for the respondent, as agreed, and took her to a hotel where the members of the party were to congregate. Respondent observed that appellant had been drinking, although he was not intoxicated.

After arriving at the hotel, respondent went with one of appellant's companions to get another young lady who was to be a member of the party. The three returned to the hotel about 10:30 p. m. The entire party, composed of ten people, having assembled, some liquor was served. Respondent herself drank but a few sips of one gin fizz, but she was aware that, subsequent to the time that appellant had first called for her, he had imbibed more liquor. At about eleven o'clock, the entire party left for the dance, in two coupe automobiles, one of them being owned and driven by appellant. Seated next to appellant in his car was the respondent, with one of the ladies on her lap. Next to them, on their right, were two of the young men, one sitting on the lap of the other. The other five members of the party occupied the other coupe.

About seven miles northeast of Yakima was a newly-opened roadhouse, known as "Marie's Barn," which

was off the paved highway and on a gravelled road. Thither the young people in the two cars went. On arriving at the place, they found it crowded, and were unable to get seats at a table. They remained for only a short while, during which time some of the party, including respondent, danced, and the others, including appellant, repaired to the bar, where they drank either beer or hard liquor, or both. Respondent saw the appellant and other members of the party drinking liquor which they had brought with them. Among those present at the roadhouse were a number of people from Yakima who were friends of respondent, and who evidently had also driven out in their automobiles.

The party of ten concluded that they would return to Yakima and seek some other place where they could dance. Respondent and the young lady with her had some hesitation about riding with appellant, on account of his physical condition, and requested that one of the other two men drive the car. Both of the other men were willing, and offered, to drive. Appellant, however, would not accede to this, insisting that he was able to do the driving and promising, moreover, that he would drive slowly and carefully.

The other car, with its five occupants, left the roadhouse first and had proceeded some distance ahead when appellant started. On the return trip, the five persons in appellant's car were seated as before, except that respondent was sitting on the lap of the other young lady who, in turn, was sitting next to the appellant. The distance from the roadhouse to the paved highway was about a mile, over the gravelled road. A short distance from its junction with the paved highway, the gravelled road turned to the left, almost at a right angle. Throughout its general length, the gravelled road was twenty-two feet wide; at the turn, it was twenty-nine feet in width. A short distance from

the point where the gravelled road began to curve was a warning sign, and beyond it, where the road united with the paved highway, was a stop-sign. The night was dark, and the gravelled road was very dusty on account of the traffic going to and from the roadhouse.

In his desire to overtake the other car, appellant immediately, upon leaving the roadhouse, proceeded to drive his car at a speed of from fifty-five to sixty miles an hour. The other occupants of the car protested against the excessive speed and warned appellant of the curve ahead. The speed, however, was not decreased. Just before coming to the curve, appellant encountered a cloud of dust caused by a passing automobile. On reaching the curve he was unable to make the turn. As a consequence, the car went straight forward, off the road and down a decline, a distance of about fifty feet. As the car left the road, appellant exclaimed, "Hold on, we are going over the bank." The car turned over, and, as a result, respondent sustained the injuries for which this action was brought. So far as the record discloses, none of the other occupants of the car were injured.

At the time of the accident, there was in effect a statute, passed in 1933, which we quote in full, with heading and title:

"LIABILITY OF MOTOR VEHICLE OPERATORS.

"An Act releasing owners of motor vehicles from responsibility for injuries to passengers therein.

"*Be it enacted by the Legislature of the State of Washington:*

"Section 1. No person transported by the owner or operator of a motor vehicle as an invited guest or licensee without payment for such transportation shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator. [Rem. 1935 Supp., § 6297-1.]

"Section 2. This act shall not relieve any owner or operator of a motor vehicle from liability while the same is being demonstrated to a prospective purchaser." [Rem. 1935 Supp., § 6297-2] Chapter 18, Laws of 1933, p. 145.

Respondent was an invited guest within the meaning of § 1 of the act.

Respondent in her complaint alleged that her injuries were caused by the gross negligence and intentional act of the appellant. The answer consisted of a general denial and two affirmative defenses, one of them being contributory negligence. The court withdrew the issue of contributory negligence from consideration by the jury.

Under our view of this case, there are two questions to be considered and determined. The first question relates to the meaning to be given to the word "intentional," as used in the above act.

It is apparent from a reading of the complaint that it was drawn upon a dual theory: (1) that appellant was guilty of gross negligence, and (2) that appellant's acts and conduct were so careless, reckless, wanton and wilful, and in such disregard of the inevitable consequences as to render the accident an intentional one, within the meaning of the statute.

Prior to the enactment of the 1933 statute, it had for years been the law of this state that a driver of an automobile was liable in damages to his invited guest only for acts of gross negligence. *Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034; *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27; *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333; *Blood v. Austin,* 149 Wash. 41, 270 Pac. 103; *Dailey v. Phoenix Investment Co.,* 155 Wash. 597, 285 Pac. 657; *Craig v. McAtee,* 160 Wash. 337, 295 Pac. 146; *Connolly v. Derby,* 167 Wash. 286, 9 P. (2d) 93; *Dawson v. Foster,* 169 Wash. 516,

14 P. (2d) 458; *Eubanks v. Kielsmeier,* 171 Wash. 484, 18 P. (2d) 48; *Meath v. Northern Pacific R. Co.,* 179 Wash. 177, 36 P. (2d) 533.

In those cases, gross negligence was defined as the want or absence of slight care. In the *Craig* and *Eubanks* cases, *supra,* reference was made to a Connecticut statute which absolved the owner or operator of a motor vehicle from liability to a guest, in case of accident, unless such accident was intentional on the part of the owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others. We held in the *Craig* and *Eubanks* cases that the rule of liability for heedlessness and reckless disregard of the rights of others did not differ appreciably from the rule of liability for gross negligence. We shall have occasion, a little later herein, to refer to the Connecticut statute and the cases based thereon.

Respondent contends that the word "intentional," as used in the statute, has reference, not merely to the accident considered as a result, but also to the various acts of the driver preceding, and apart from, the result. The argument is that, because appellant intentionally drove the car at a rate of approximately sixty miles an hour, over a dusty road, in the vicinity of a curve, and intentionally failed or refused to heed the warnings given him, the jury had the right to find that the accident was intentional; further, that, under the evidence, it was for the jury to say whether or not it was appellant's intention to injure the respondent or any of the other occupants of his car.

Authorities are cited to the effect that, when the omission to exercise care is so gross that it shows an utter lack of regard for the safety of others, it will justify a presumption or finding of intention to accomplish the result. The court seems to have adopted that theory in its submission of the case to the jury. Upon

that theory, it withdrew the issue of contributory negligence, on the principle that contributory negligence is not a defense in an action to recover for an injury due to wilful or intentional misconduct.

We shall not review the cases cited by respondent. Under the particular statutes and facts involved therein, they were, no doubt, correctly decided. The question here is not whether wilful or wanton misconduct, terminating in an accident, is to be considered as "intentional," but whether the legislature, when it used the words "unless such accident shall have been intentional on the part of the owner or operator," meant anything other than that the owner or operator must have purposely brought about the "accident." We are here concerned with a peculiar statute of our own, to be considered with reference to the law as it existed at the time that the statute was enacted.

When the legislature enacted the 1933 statute, it did so with full knowledge of the gross negligence rule and its effect. Obviously, the legislature concluded to limit still further the liability of owners and operators of motor vehicles to invited guests. Instead of making such liability depend upon gross negligence, or the absence of slight care, the legislature withdrew the question of negligence altogether and limited the liability to cases where the owner or operator purposely caused a wreck or disaster, with consequent injuries to the guest.

If the act was not intended as a further limitation upon the former rule, then it accomplished nothing, because (1) intentional injury had always been actionable, and (2) gross negligence covered every injury resulting from the failure to exercise slight care, yet not occasioned intentionally. More than this, if the act was not intended as a further limitation of liability, then it had the effect of actually increasing the extent

of liability, because, under respondent's construction, an act of gross negligence could be held to be *intentional,* thereby depriving the owner or operator of the defense of contributory negligence. We are convinced that the legislature did not intend such a result, but that it meant to limit liability to cases where the owner or operator intended to cause injury.

Under our construction of the statute, we are further convinced that there was no evidence in this case warranting the jury in finding that the accident, that is, the wreck and consequent injury, was intentional. The parties were friends, they were on pleasure bent, their objective was a dance at Yakima, and appellant's immediate purpose was to overtake the other car, not to wreck his own. There was no evidence of any intention on the part of appellant to commit suicide, homicide, or mayhem, or to destroy property. We conclude that there was no basis for holding appellant liable as for an "intentional accident."

The second question relates to the validity of the 1933 act. Respondent contends that the act is void because it violates the following provisions of the state constitution: Art. II, § 19, providing that no bill shall embrace more than one subject and that such subject shall be expressed in the title; Art. I, § 3, relating to due process; Art. I, § 12, relating to class legislation and equal protection of the law; Art. I, § 21, relating to trial by jury; Art. I, § 29, making the provisions of the constitution mandatory unless expressly declared otherwise therein; Art. IV, §§ 1 and 6, relating to the judicial powers of the state; and, further, because the act also violates the fourteenth amendment of the constitution of the United States, relating to due process and equal protection of the laws.

It is a well-settled principle of law, followed by all courts, that the presumption is in favor of the con-

stitutionality of a statute. 6 R. C. L. 97, § 98. As expressed in our decisions, the rule in this state is that the court will not declare a law unconstitutional unless its invalidity is so apparent as to leave no reasonable doubt on the subject. *State v. Ide,* 35 Wash. 576, 77 Pac. 961, 67 L. R. A. 280, 102 Am. St. 914; *Litchman v. Shannon,* 90 Wash. 186, 155 Pac. 783; *Uhden, Inc. v. Greenough,* 181 Wash. 412, 43 P. (2d) 983.

With this fundamental principle in mind, we will consider the grounds of respondent's contention. We take up, first, the question of the alleged insufficiency of the title of the act.

Art. I, § 1 of the constitution does not require the title of an act to be a complete index to its provisions. The title is sufficient if it gives such notice of its object as reasonably to lead to an inquiry into the body of the act. *State ex rel. Zent v. Nichols,* 50 Wash. 508, 518, 97 Pac. 728; *Sorenson v. Kittitas Reclamation District,* 70 Wash. 528, 529, 127 Pac. 102; *State v. Asotin County,* 79 Wash. 634, 639, 140 Pac. 914; *State v. Hennessy,* 114 Wash. 351, 364, 195 Pac. 211; *State ex rel. Reitmeier v. Oakley,* 129 Wash. 553, 558, 225 Pac. 425. This constitutional provision is to be liberally construed, and the objections to the title must be grave and must present a palpable conflict between the title and the constitution before the act will be held unconstitutional. *Northern Cedar Co. v. French,* 131 Wash. 394, 419, 230 Pac. 837; *National Ass'n of Creditors v. Brown,* 147 Wash. 1, 264 Pac. 1005.

Had the title to the 1933 act been specific enough to cover every objection raised by respondent, the enacting clauses would practically have been a repetition of the title. One reading the title to this act would have his attention sufficiently challenged to inquire whether the body of the act contained the very provisions that it did. While the word "owner" does not necessarily

include the word "operator," and while the word "passenger" is somewhat broader than the words "invited guest," there is nevertheless a kinship between them forming a legitimate and natural association with the subject of the title. In our opinion, the title gave reasonable notice of the subject legislated upon and was, therefore, sufficient.

 We next consider the provisions of Art. I, §§ 3 and 12 of the state constitution and the fourteenth amendment of the United States constitution, relating to due process and the equal protection of the laws.

None of these constitutional provisions apply to laws enacted by a state legislature in the exercise of its police power. We have repeatedly so held. *Fisher Flouring Mills Co. v. Brown,* 109 Wash. 680, 692, 187 Pac. 399; *State ex rel. Lane v. Fleming,* 129 Wash. 646, 648, 225 Pac. 647, 34 A. L. R. 500; *Seattle v. Gervasi,* 144 Wash. 429, 432, 258 Pac. 328. See, also, *Powell v. Pennsylvania,* 127 U. S. 678, 8 S. Ct. 992, 1257, 32 L. Ed. 253.

However difficult it may be to give a precise or satisfactory definition of "police power," there is no doubt that the state, in the exercise of such power, may prescribe laws tending to promote the health, peace, morals, education, good order and welfare of the people. Police power is an attribute of sovereignty, an essential element of the power to govern, and a function that cannot be surrendered. It exists without express declaration, and the only limitation upon it is that it must reasonably tend to correct some evil or promote some interest of the state, and not violate any direct or positive mandate of the constitution. *Bowes v. Aberdeen,* 58 Wash. 535, 542, 109 Pac. 369, 30 L. R. A. (N. S.) 709; *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 178, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *State ex rel. Webster v. Superior Court,* 67

Wash. 37, 40, 120 Pac. 861, L. R. A. 1915C, 287, Ann. Cas. 1913D, 78; *State v. Mountain Timber Co.*, 75 Wash. 581, 584, 135 Pac. 645, L. R. A. 1917D, 10, affirmed in *Mountain Timber Co. v. Washington*, 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642.

While, formerly, the power was viewed as one of strict and direct application, it has now come to be more favored on account of changed and changing economic and social conditions, and at present is frequently relied on to sustain laws which affect the common good in only an indirect way. *State ex rel. Webster v. Superior Court*, 67 Wash. 37, 40, 120 Pac. 861, L. R. A. 1915C, 287, Ann. Cas. 1913D, 78. A large discretion is therefore vested in the legislature to determine what the public interest demands and what measures are necessary to secure and protect the same. *State v. Somerville*, 67 Wash. 638, 641, 122 Pac. 324.

In determining whether a law comes within the police power of the state, it is not incumbent upon the court to find that facts which would justify such legislation actually exist. If a state of facts which would justify the legislation can reasonably be conceived to exist, the court must presume that it did exist and that the law was passed for that purpose. *State v. Pitney*, 79 Wash. 608, 612, 140 Pac. 918, Ann. Cas. 1916A, 209; *Tacoma v. Fox*, 158 Wash. 325, 331, 290 Pac. 1010; *Spokane v. Latham*, 181 Wash. 161, 163, 42 P. (2d) 427.

It is a matter of common knowledge that, since 1926, when the gross negligence rule was first applied to host and guest cases, litigation arising out of such relations, where automobiles were involved, has steadily increased. It is also a matter of common knowledge that many owners and operators of automobiles carry liability insurance, and that, in many instances, the injured guest institutes an action against the host for the pur-

pose of recovering damages from the insurance company. It has been asserted that collusion frequently takes place between the host and the guest to establish a case of gross negligence against the host, in order to fasten liability upon a company by whom the host is insured; that, because of a friendly regard for the guest, and knowing that he himself will not have to pay the bill anyway, the host is willing to admit, and often testify to, a state of facts other than it actually is, and thus deprive the insurance company of the benefit of a good defense.

From the information and knowledge had by the legislature upon the subject, that body may have concluded that this type of litigation had not only become vexatious, but had reached a point where it should no longer be encouraged or permitted; that it would reduce the number of reckless drivers if those who accepted their gratuities should exercise greater circumspection in their choice of hosts and the conditions under which a trip was to be made; that careful drivers who otherwise would be willing to extend a favor or gratuity were nevertheless deterred by the fear that, through some misfortune, they would be charged with gross negligence and be compelled to defend suits for exorbitant sums; that still others were too willing to misrepresent facts, or to permit them to be misrepresented unchallenged, with the result that unjust judgments were often obtained which the courts could not prevent; and finally, that, in the regulation of the state's highways, the legislature would assume its prerogative of imposing certain conditions under which the highways might be used, with the view of making them safer for all concerned.

These were matters upon which the legislature could exercise its discretion, and with which the courts are not concerned. Such a state of facts may reason-

ably be conceived as having existed and to have been presented to, and considered by, the legislature. If so, then we believe that the legislature was justified in passing the measure that it did. Since the gross negligence rule had not proved effective, a stricter rule was necessary to accomplish the desired result. The act is well within the police power of the state.

■ Respondent had no vested right of action at the time that the act was passed. The effective date of the act was prior to the time of the accident. Assuming that at common law respondent would have had a right of action, the rule upon which such right was founded was changed by the legislature, which it had the right to do. A person has no vested interest in any rule of the common law. *Munn v. Illinois,* 94 U. S. 113, 134, 24 L. Ed. 77; *New York Central R. Co. v. White,* 243 U. S. 188, 198, 37 S. Ct. 247, 61 L. Ed. 667, Ann. Cas. 1917D, 629; *Silver v. Silver,* 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939; 3 Willoughby on Constitution of the United States (2d Ed.) 1820, § 1216; 6 R. C. L. 156, 157, § 156. There was no violation of the due process clause.

■ There was a reasonable basis for making a distinction between invited guests and paying passengers, and, as to all persons similarly situated, the law operated equally. Hence, there was no denial of equal privileges or immunities. *Allen v. Bellingham,* 95 Wash. 12, 31, 163 Pac. 18; *Seattle v. Gervasi,* 144 Wash. 429, 432, 258 Pac. 328.

■ The next ground of respondent's contention is that the act violates Art. I, § 21, of the state constitution, relating to trial by jury. Since the act abolished all right of recovery for negligence, there was nothing left to be tried by a jury. *State ex rel. Davis-Smith Co. v. Clausen,* 65 Wash. 156, 210, 117 Pac. 1101, 37 L. R. A. (N. S.) 466; *Mountain Timber Co. v. Wash-*

*ington,* 243 U. S. 219, 37 S. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642.

The next ground of the contention is rested upon Art. I, § 29 of the constitution, which says that its provisions shall be mandatory unless otherwise expressly declared. That provision has no bearing on the case extrinsic of what has already been said.

The final ground of the contention is that the act violates Art. IV, §§ 1 and 6 of the state constitution, relating to the judicial powers of the state. The act does not assume to interfere with any power of the court. What it does is to abolish certain causes of action. The power of a court is not invoked until a cause comes before it, and terminates when the action ceases. The judicial power is not affected merely because litigation decreases or a certain type of litigation is abolished.

As may be expected, there are but few cases that present a question similar to the one before us, and none, in our opinion, exactly like it in all respects. We, therefore, have no definite precedent, and but little apposite authority, to serve as a guide or to aid by way of analogy. Only four cases upon the specific question of constitutionality, as affected by the due process and equal protection clauses, have been cited to us. *Silver v. Silver,* 108 Conn. 371, 143 Atl. 240, 65 A. L. R. 943, affirmed by the United States supreme court in 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939; *Stewart v. Houk,* 127 Ore. 589, 271 Pac. 998, 61 A. L. R. 1236; *Coleman v. Rhodes,* 35 Del. 120, 159 Atl. 649, and *Ludwig v. Johnson,* 243 Ky. 533, 49 S. W. (2d) 347.

In the *Silver* case, the statute provided that no guest transported in a motor vehicle should have a cause of action for damages against the owner or operator for injury, death, or loss, unless the accident was intentional on the part of such owner or operator or caused

by heedlessness or his reckless disregard of the rights of others. Prior to the enactment of that statute, the liability of host to guest was predicated on the failure to exercise ordinary or reasonable care. The constitutionality of the statute was upheld, on the ground that it was within the police power of the state to enact such laws in the interest of the public welfare and in the regulation of motor vehicles and motor traffic. It was further held that the act did not deprive the guest of the equal protection of the law, because it affected alike all who elected to be transported as guests in motor vehicles.

On appeal to the United States supreme court, the case was affirmed. Resting its decision on the ground that the act did not violate the equal protection clause of the Federal constitution, the court used this language:

"We need not, therefore, elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object [citing cases].

"The use of the automobile as an instrument of transportation is peculiarly the subject of regulation. We can not assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation. In some jurisdictions it has been judicially determined that a lower standard of care should be exacted where the carriage in any type of vehicle is gratuitous [citing cases]. Whether there has been a serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination and, if found, may well

be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts.''

and further:

"In this day of almost universal highway transportation by motor car, we cannot say that abuses originating in the multiplicity of suits growing out of the gratuitous carriage of passengers in automobiles do not present so conspicuous an example of what the legislature may regard as an evil, as to justify legislation aimed at it, even though some abuses may not be hit [citing cases]. It is enough that the present statute strikes at the evil where it is felt and reaches the class of cases where it most frequently occurs.''

It must be conceded, however, that this case is not an absolute authority for our position, because it is apparent that the Connecticut statute did not abolish all actions, for *any* degree of negligence, but rather established a rule in practical accord with our holdings under the gross negligence rule.

In *Stewart v. Houk,* 127 Ore. 589, 271 Pac. 998, 61 A. L. R. 1236, the action was based on a statute which provided that a guest riding in a vehicle upon the public highways of the state should have *no* right of action against the owner or driver of such vehicle for death [held to include injuries] sustained while riding as such guest. The act was held unconstitutional. It will be observed that the act went much further than ours, inasmuch as it applied to all vehicles, whether motor or otherwise, and made no exception of injuries sustained through the intentional act of the driver.

In *Coleman v. Rhodes,* 35 Del. 120, 159 Atl. 649, *supra,* the statute in question provided:

" 'That the operator or owner of a motor vehicle shall be relieved from any liability whatsoever for injuries suffered or sustained by any person while riding with said operator or in said owner's car free of charge'.''

The act was held unconstitutional, but again it will be noted that it went further than our statute, in that it relieved the owner or operator of all liability, whether the injury was inflicted intentionally or not.

In *Ludwig v. Johnson,* 243 Ky. 533, 49 S. W. (2d) 347, *supra,* the statute involved was practically the same as ours, except that it made liability depend on some "intentional act" of the owner or driver, rather than upon an "accident" which was "intentional" on the part of the owner or operator. The Kentucky court declared the act unconstitutional.

However, in so far as any constitutional question is involved in this case, the Oregon, Delaware, and Kentucky cases do not establish a controlling precedent, because in each of those states the constitution contained a provision which was, in effect, a limitation upon the power of the legislature to abolish rights of action for injury to person, property, or reputation. In Oregon and Delaware, it is specifically declared in the bill of rights, and, in Kentucky, elsewhere in the constitution, that there *shall* be a remedy at law for injury done to person, property, or reputation. Oregon Constitution, Art. I, § 10; Delaware Constitution, Art. I, § 9; Kentucky Constitution, §§ 14, 54, 241. In the Oregon and Kentucky cases, the constitutional provisions were referred to and made the basis of the respective decisions. In the Delaware case, no specific mention of the provision was made, but the opinion indicates that both the court and counsel had it definitely in mind. In passing, we may say that the Connecticut constitution contains a similar provision, Art. I, § 12, although it does not appear from the opinion in the case from that state, cited above, that any point was made of it to the court.

In this state, the constitution contains no such provision, but only the general "due process" and "equal

protection'' clauses. There is, therefore, no express, positive mandate of the constitution which preserves such rights of action from abolition by the legislature, even when acting under its police power. Under our holdings, as already stated, the "due process" and "equal protection" clauses of the constitution do not apply to laws enacted by the legislature in the exercise of the police power. The only limitation upon the legislature in the exercise of such power is that the act must reasonably tend to correct some evil or promote some interest of the state and not violate any positive mandate of the constitution. The act, in our opinion, fully meets the requirements of the constitution.

The judgment is reversed, with direction to the trial court to dismiss the action.

MITCHELL, HOLCOMB, TOLMAN, and GERAGHTY, JJ., concur.

