CATHERINE EGAN, AN INFANT, BY HER GUARDIAN *AD LITEM*, GEORGE EGAN, Sr., *ET AL.*, PLAINTIFFS-APPELLANTS, v. ERIE RAILROAD COMPANY, A CORPORATION OF THE STATE OF NEW YORK, *ET AL.*, DEFENDANT-RESPONDENT.

Argued February 3, 1959—Decided March 2, 1959.

244

*Mr. Herbert E. Greenstone* argued the cause for the plaintiffs-appellants (*Messrs. Greenstone & Greenstone,* attorneys).

*Mr. H. Curtis Meanor* argued the cause for the defendant-respondent (*Messrs. Emory, Langan, Lamb & Blake,* attorneys; *Mr. H. Curtis Meanor* on the brief).

The opinion of the court was delivered by

PROCTOR, J. The plaintiffs appealed to the Appellate Division of the Superior Court from a summary judgment which the Law Division had entered in favor of the defendant railroad company. We granted certification under *R. R.* 1:10–1(*a*).

Catherine Egan, seven years of age, sued the Erie Railroad Company to recover damages arising from an accident in which she was struck by a freight car of the defendant. Her parents sued for consequential damages. The pleadings and the pretrial order disclose that at about noontime on November 8, 1955 the infant plaintiff attempted to board a moving freight train operated by the defendant, Erie Railroad Company, and was severely injured when she slipped and fell under the wheels of one of the cars. She resided with her parents in a housing project owned by the Housing Authority of the City of Hoboken. The housing project is separated from the defendant's railroad tracks by a narrow strip of vacant and unimproved land, varying from 10 to 40 feet wide, owned by the City of Jersey City. The Housing Authority erected a wire fence six feet high between its property and the aforesaid strip of land. This fence extends 1600 feet, which is the complete length of the property of the project. Both the Housing Authority of the City of Hoboken (together with the City of Hoboken) and the City of Jersey City are defendants in the action but are not parties to this appeal.

The infant plaintiff obtained access to the railroad tracks by climbing over the wire fence. The train involved in the accident consisted of 53 cars with the caboose immediately behind the engine pulling the train. All members of the crew of five were riding in the engine or the caboose and none of them observed the infant plaintiff prior to the accident. The employees of the defendant company had prior knowledge that children were accustomed to playing upon the tracks in the vicinity of the accident and had on occasions chased them.

The case was pretried on March 13, 1958. The pretrial order, after stating plaintiffs' contention that the defendant was negligent in failing to take the necessary safety measures to prevent children from coming on the tracks, contained the following allegations which had not been set forth in the amended complaint: "The deft wantonly caused injury to the infant plf upon its said property when it had actual notice of the infant being present upon its property at the time of said occurrence"; "The deft wantonly omitted to take necessary precaution to provide watchmen on its said property after having previous knowledge that children were accustomed to playing thereon."

Thereafter, the defendant railroad company moved for summary judgment on the ground that *N. J. S. A.* 48:12–152 barred the plaintiffs' action. The trial court held that the statute was applicable and directed that final judgment be entered in favor of the defendant railroad company.

*N. J. S. A.* 48:12–152 provides:

"It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway.

Any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages from the company owning or operating the railroad. This section shall not apply to the crossing of a railroad by a person at any lawful public or private crossing."

This statute had its origin in 1869. *L.* 1869, *c.* 285, *p.* 806. It was enacted in virtually the above language as part of

the General Railroad Law in 1903, *L.* 1903, *c.* 257, § 55, and re-enacted in its present form in the general revision of the New Jersey statutes in 1937.

Plaintiffs contend on this appeal that children under present New Jersey decisional law cannot be deemed contributorily negligent as a matter of law and that the statute "should not apply in the case of an infant."

█ █ The effect of the statute is to absolve a railroad company from a duty to a trespasser. Although a trespasser is deemed to have contributed to an injury sustained as a matter of law, the statute is not restricted to that proposition, as it goes on to say that a trespasser who sustains an injury in the manner specified "shall not recover therefor any damages from the company owning or operating the railroad." This statute has been construed by both our state and federal courts in actions brought on behalf of infants to recover for injuries resulting from being struck by engines or railroad cars. In *Barcolini v. Atlantic City & S. R. Co.,* 82 *N. J. L.* 107 (*Sup. Ct.* 1911), a child 21 months old strayed upon the tracks of the defendant railroad company and was struck by the defendant's train. Our former Supreme Court in denying recovery held that the above quoted statute is "a bar to recovery by any person who walks, stands or plays upon a railroad. It in terms precludes any recovery for damages due to injuries received under the conditions therein mentioned, and applies to all persons alike, without distinction as to their age or physical or mental condition."

The rule of the above decision was applied in *Erie R. Co. v. Hilt,* 247 *U. S.* 97, 38 *S. Ct.* 435, 62 *L. Ed.* 1003 (1918). There a boy less than seven years old had been playing marbles near the siding of the defendant's railroad in Garfield, New Jersey, when a marble rolled under a freight car of the defendant. The boy tried to reach the marble with his foot and while he was doing so the car was backed and he was injured. There was open ground next to the siding which had been used as a playground by children, some very young, who were accustomed to playing not only on

the open ground, but on the siding itself and over and about the cars standing on the rails. The practice was frequent and well known to the defendant railroad. Children were sometimes driven or ordered away but with little effect, since there was no barrier to keep them off. A jury verdict for the infant plaintiff was affirmed by the Circuit Court of Appeals. In reversing that holding Justice Holmes, speaking for the United States Supreme Court, said:

"The ground of the decision [by the Circuit Court of Appeals] seemingly is that the statute [*L.* 1903, *c.* 257, § 55; *N. J. S. A.* 48:12–152] does not appear beyond doubt to apply to very young infants, although the word 'playing' sufficiently indicates that it had minors in view, even if the absoluteness of the opening phrase 'any person' were not enough to exclude the reading in of exceptions by the Court. The words of the statute seem to us to require a different construction from that adopted [below] and they have been given their full literal meaning by the supreme court of the State in the case of an infant younger than the plaintiff. *Barcolini v. Atlantic City & S. R. Co.,* 82 *N. J. L.* 107, 81 *Atl.* 494. In view of the importance of that tribunal in New Jersey, although not the highest Court in the State, we see no reason why it should not be followed by the Courts of the United States, even if we thought its decision more doubtful than we do."

In *Erie R. Co. v. Duplak,* 286 *U. S.* 440, 52 *S. Ct.* 610, 76 *L. Ed.* 1214 (1932), a boy five years of age was injured by defendant's freight train while playing upon a railroad bridge built by the defendant over a canal in Passaic, New Jersey. It appeared that from time to time boys had played upon the bridge and had put diving boards upon the lower tiers. The infant plaintiff obtained a verdict which was affirmed by the Circuit Court of Appeals. The United States Supreme Court reversed on the ground that the statute (*L.* 1903, *c.* 257, § 55; *N. J. S. A.* 48:12–152) "necessarily controls here whatever, otherwise, might be the rule." See also *Kowaleski v. Pennsylvania R. Co.,* 103 *F. 2d* 827 (3 *Cir.* 1939), *certiorari* denied 308 *U. S.* 556, 60 *S. Ct.* 95, 84 *L. Ed.* 467 (1939), where it was held that the above statute precluded recovery for the death of a 12-year-old boy struck by an engine while walking on the railroad right of way; *Lissak v. Pennsylvania R. Co.,* 33

*F. Supp.* 214 (*D. C. E. D. N. Y.* 1940), holding that the statute barred recovery by an eight-year-old boy who was injured when he tried to board a moving freight train; and *Cohen v. Pennsylvania-Reading Seashore Lines,* 58 *F. Supp.* 545 (*D. C. E. D. Pa.* 1944), holding that the statute prevented recovery by a minor (age not specified) injured while trespassing upon the railroad.

■ We agree with the above authorities that the statute applies to trespassing minors as well as adults and that it cannot be reasonably construed otherwise. As expressed in *Erie R. Co. v. Hilt, supra,* the words "Any person" encompass children, and the reference to "playing on a railroad" further demonstrates the legislative intention that children should come within the prohibition of the statute. It is to be noted that following the courts' interpretation of the statute that it applies to infants the Legislature has never indicated its disapproval. Moreover, the statute was re-enacted with only insignificant changes in verbiage in the general revision of the New Jersey statutes in 1937.

"The construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent." *Barringer v. Miele,* 6 *N. J.* 139, 144 (1951).

■■ At the time of the adoption of the statute and for many years thereafter the policy of the common law of New Jersey was that a landowner owed no duty to a trespasser other than to refrain from inflicting injury upon him through willful and wanton conduct. *Hess v. Atlantic City Railroad Co.,* 95 *N. J. L.* 494 (*E. & A.* 1921). The fact that the trespasser was an infant was immaterial. *Delaware L. & W. R. Co. v. Reich,* 61 *N. J. L.* 635 (*E. & A.* 1898); *Kaproli v. Central R. of New Jersey,* 105 *N. J. L.* 225 (*E. & A.* 1928). In the latter case a four-year-old boy was injured while attempting to climb upon defendant's slow moving freight train. It appeared that because of the terrain freight trains were compelled to slow down, and the

defendant's employees knew that children often took advantage of this situation and climbed upon the cars. Plaintiff's theory of liability was that where a railroad company knows of such habits of children the company is bound to use reasonable care to prevent the children from trespassing or attempting to climb on the cars. The Court of Errors and Appeals decided the case without reference to the statute and upon common-law principles. In rejecting plaintiff's theory and in affirming a nonsuit entered in the trial court, the court said:

"The children, when they went upon the right of way of the railroad company and attempted to climb upon the cars or did climb upon the cars of the defendant company, were trespassers. Such being the case, the fact that they were too young to realize the danger which they thereby placed themselves in imposed no obligation upon the defendant railroad company. * * * * * * * * * * * * * The railroad company is under no obligation to hire employes to keep its right of way free from children who may trespass upon it." (105 *N. J. L.* 226, 228)

The statute adopted the above common-law policy in an unqualified form in relation to railroads. This construction was expressly recognized in *Erie R. Co. v. Hilt, supra.* See also *Erie R. Co. v. Duplak, supra; Hess v. Atlantic City Railroad Co., supra.* As the basis of the common-law immunity in these circumstances was the absence of a duty on the part of the landowner, it was unnecessary to consider the question of the trespasser's contributory negligence. Contributory negligence only becomes a factor when there has been a breach of duty by the alleged tortfeasor. *Cohen v. Borough of Bradley Beach,* 135 *N. J. L.* 276 (*E. & A.* 1946). We conclude that the statute was enacted for the purpose of providing immunity from liability in those cases that come within the factual situations set forth therein. In this view of the statute, plaintiffs' contention that as an infant trespasser she cannot be guilty of contributory negligence as a matter of law is irrelevant.

In recent years our courts have restricted the previous common-law policy as to the non-liability of the owner of

land to trespassers. Humanitarian considerations and reasons of social policy have led to a more flexible doctrine balancing the landowner's right to the use of his land with society's interest in the protection of its youth against injury. *Strang v. South Jersey Broadcasting Co.*, 9 *N. J.* 38 (1952); *Harris v. Mentes-Williams Co., Inc.*, 11 *N. J.* 559 (1953); *Cloyes v. Delaware Township*, 23 *N. J.* 324 (1957); *Wytupeck v. City of Camden*, 25 *N. J.* 450 (1957); *Simmel v. New Jersey Coop Co.*, 28 *N. J.* 1 (1958); *Note, "Landowners' Liability in New Jersey: The Limitation of Traditional Immunities,"* 12 *Rutgers L. Rev.* 599 (1958). Plaintiffs contend that the statute which reflects the common-law policy at the time of its enactment conflicts with the above doctrine and thus the statute should be reconstrued so as to conform with our present decisional law. However, to do so would be a judicial usurpation of the legislative function. There is no question that the Legislature, subject to constitutional limitations, may fix the State's policy as to rules of conduct which result in liability or non-liability. *Collopy v. Newark Eye and Ear Infirmary*, 27 *N. J.* 29, 41 (1958); *Middleton v. Texas Power & Light Co.*, 249 *U. S.* 152, 39 *S. Ct.* 227, 63 *L. Ed.* 527 (1919); *Shea v. Olson*, 185 *Wash.* 143, 53 *P. 2d* 615, 111 *A. L. R.* 998 (*Sup. Ct.* 1936). In such circumstances it is the duty of the court to apply the legislative will notwithstanding that it may conflict with the court's own philosophy. *Baader v. Mascellino*, 116 *N. J. Eq.* 126 (*E. & A.* 1934). In the present instance the Legislature has solidified the common law in effect at the time of the enactment as it related to trespassers upon the rights of way of railroads. The declaration of a contrary rule on grounds of policy is a legislative rather than a judicial function. *Cf. Cohen v. Borough of Bradley Beach, supra.* That the courts have expanded the duties of landowners in other areas does not permit them to encroach upon a field where the Legislature has spoken.

 Plaintiffs argue that the modification of the rules applicable to a landowner's common-law liability, discussed above, has had the effect of leaving the statute isolated

within our present body of law, with the result that the railroads are granted an immunity not possessed by other landowners. This, it is claimed, violates the equal protection clauses of the Federal and State Constitutions. Plaintiffs cite no authority, and we have found none, which supports the proposition that a statute applicable only to a specified class, which statute was valid when enacted, is subsequently rendered invalid by judicial determinations in cases not involving that class. Essentially the issue resolves itself into one of reasonableness of the legislative classification. A statute does not constitute a denial of equal protection of the laws merely because it extends to some persons privileges denied to others, or imposes restrictions or liabilities on some but not on others. Such classifications do not render legislation unconstitutional if they are based on reasonable differences in the subject matter. *Guill v. Mayor and Council of City of Hoboken,* 21 *N. J.* 574 (1956) ; *Silver v. Silver,* 108 *Conn.* 371, 143 *A.* 240, 65 *A. L. R.* 943 (*Sup. Ct. Err.* 1922), affirmed 280 *U. S.* 117, 50 *S. Ct.* 57, 74 *L. Ed.* 221 (1929). Considering the importance of railroads as an instrument of transportation and commerce, the enormous territory encompassed by their rights of way, and the practical impossibility of adequately fencing or guarding them against trespassers, we cannot say that legislation relieving them from liability to trespassers while not so relieving other landowners is arbitrary or unreasonable. The great weight of authority throughout the country holds that even in the absence of a statute railroads are ordinarily under no duty to keep children from trespassing upon their rights of way or from boarding their cars. Annotations, 43 *A. L. R.* 38 (1926) ; 31 *A. L. R. 2d* 789 (1953). This result is predicated upon a realization that the difficulty of safeguarding the infant trespasser and the public interest in the effective operation of railroads outweigh the risk involved. *Nolley v. Chicago, M., St. P. & P. R. Co.,* 183 *F. 2d* 566 (8 *Cir.* 1950), *certiorari* denied 340 *U. S.* 913, 71 *S. Ct.* 284, 95 *L. Ed.* 660 (1951) ; *Dugan v. Pennsylvania Railroad Company,* 387 *Pa.* 25, 127 *A. 2d* 343 (*Sup.*

*Ct.* 1956), *certiorari* denied 353 *U. S.* 946, 77 *S. Ct.* 825, 1 *L. Ed.* 2d 856 (1957); see *Restatement, Torts,* § 339(*d*); *Prosser, Torts* (2d ed. 1955), § 76, *p.* 444. Undoubtedly it was within the Legislature's province to make such a determination. We conclude that *N. J. S. A.* 48:12–152 is the result of and presently remains a reasonable classification by the Legislature and does not violate the equal protection clause of either the Federal or the State Constitution.

▮ Finally, plaintiffs assert that the pretrial order contains allegations of wanton conduct on the part of the defendant and its employees, and that as the statute does not operate as a bar to recovery for such conduct the granting of defendant's motion for summary judgment was improper. While it is true that the statute does not preclude recovery for injuries received as a result of a railroad's willful or wanton conduct, *Kowaleski v. Pennsylvania R. Co., supra; Hess v. Atlantic City Railroad Co., supra,* we find the record devoid of any factual basis for such a claim. The contention that the defendant's employees had "actual notice" of the infant plaintiff's presence at the scene of the accident is not only unsupported but is expressly contradicted by the plaintiffs' own statement in their demand for admissions. This demand was that the defendant admit "[t]hat none of the crew observed the infant plaintiff, Catherine Egan, prior to the accident." The defendant's affirmative answer was not rebutted, and at the oral argument plaintiffs' counsel conceded he had no proof to the contrary.

▮ The claim of wanton negligence in the defendant's failure to have watchmen present at the scene at best supports an allegation of ordinary negligence. In essence, plaintiffs' claim is based upon the railroad's failure to take precautions against reasonably foreseeable harm to children coming upon the right of way after it had notice that children did so trespass.

"To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his

conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." *Staub v. Public Service Railway Co.*, 97 *N. J. L.* 297, 300 (*E. & A.* 1922).

See also *King v. Patrylow,* 15 *N. J. Super.* 429 (*App. Div.* 1951). Even ignoring the fact that in these circumstances a railroad is ordinarily under no duty to provide watchmen, *Kaproli v. Central R. of N. J., supra,* its failure to do so falls far short of the standard required for a finding of willful or wanton conduct. Willfulness and wantonness are conclusions to be drawn from a given set of facts and circumstances. When in the light of common experience and judicial precedents the facts and circumstances alleged clearly do not constitute such conduct, the mere fact that plaintiffs characterize them as willful or wanton is not sufficient to create a triable issue. Summary judgment was properly entered for the defendant.

Under our view of the case, it is unnecessary for us to decide whether the allegation of wanton conduct set out for the first time in the pretrial order, constitutes a new and different cause of action that would be barred by the statute of limitations applicable to suits against railroad companies, *N. J. S. A.* 48:12–151. *Cf. Macknowski v. Hudson & Manhattan R. Co.,* 121 *N. J. L.* 126 (*E. & A.* 1938).

The judgment under review is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—None.