**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1312-16T2

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

L.D.,

    Defendant-Appellant,

and

M.A.,

    Defendant.

_____

IN THE MATTER OF S.A., Minor.

_____

          Argued June 4, 2018 – Decided June 20, 2018

          Before Judges Ostrer and Firko.

          On appeal from Superior Court of New Jersey,
          Chancery Division, Family Part, Cumberland
          County, Docket No. FN-06-0092-16.

          Clara S. Licata, Designated Counsel, argued
          the cause for appellant (Joseph E. Krakora,
          Public Defender, attorney; Clara S. Licata,
          on the briefs).

Jennifer Krabill, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Jennifer Krabill, on the brief).

Melissa R. Vance, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Melissa R. Vance, on the brief).

PER CURIAM

Defendant L.D. ("mother") appeals from an August 2, 2016 Family Part order, finding that she abused her son S.A.,[1] by exposing him to substantial risk of harm and imminent danger by inflicting excessive corporal punishment by whipping him with an extension cord, leaving bruises on his body. The fact-finding order was perfected for appeal by an October 25, 2016 order terminating the litigation. We affirm.

I.

We derive the salient facts from the record developed at the fact-finding hearing. Defendant L.D. is the biological mother of S.A., born in February 2006. The child has not seen his biological father, M.A., since he was four years old. Defendant's history with plaintiff Division of Child Protection and Permanency ("Division"), relative to this appeal, began on December 8, 2015,

---

[1] We use initials to protect the identity of those involved and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

following a referral for physical abuse after S.A. complained of pain after being beaten with an extension cord by his mother. Following interrogation by the police, a detective from the Cumberland County Prosecutor's Office interviewed the child and mother in the presence of a Division caseworker at the Bridgeton police station. S.A. told the police that he recently attended a party at the home of a relative and his older female cousin pushed him into a fence, making a hole in his jacket. He did not want to fight back because she was a girl. When L.D. saw the hole, she cursed at him and pushed him out of the relative's house. During the ride home, L.D. told S.A. that he was going to get a beating when he got home.

After arriving home, L.D. directed S.A. to find a belt and when he could not, she grabbed a black extension cord and hit him with it while he leaned across a baby table in the living room. S.D. told the detective that L.D. wanted to know why he did not fight back when his cousin pushed him. According to S.A., she made him remove his pants. Following the beating, L.D. forced S.A. to do push-ups and "planks" as further punishment.

L.D. told the investigators initially that she beat S.D. with a belt five or six times with his pants on. This admission was witnessed by the caseworker. L.D. stated that she could not "hit

him anymore" because she was pregnant and suffered from back spasms. She denied forcing him to do push-ups and planks.

L.D. corroborated S.A.'s statement that she directed him to find a belt. The detective confronted L.D. with a photograph of an extension cord S.A. selected out of a photo "lineup." After several hours of questioning, L.D. recanted her story and admitted to hitting S.A. with an extension cord after viewing the photograph. She later claimed that she was coerced into doing so because of duress. L.D. described S.A. as having behavioral issues, and that he was classified as "other health impaired." She claimed S.A. was untruthful. Essentially, L.D. believed she was justified in her actions based on his behavior. S.A. showed the caseworker marks on his arms, upper thigh, and a bruise behind his knee, which caused him great pain.

Following her interview, L.D. was advised that she was going to be arrested. She started to hyperventilate and was transported to an emergency room for evaluation. The Division removed S.A. from defendant's care and placed him with a foster family.[2] Following a hearing on December 10, 2015, Judge Harold U. Johnson, Jr. upheld the Division's emergent removal of S.A., which L.D.

---

[2] A Dodd removal is an emergent removal of a minor without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

consented to. On the return date held on December 21, 2015, the judge ordered S.A. to remain in foster care. L.D. was allowed supervised parenting time and ordered to undergo a psychological evaluation. S.A. lived with his foster family until the end of January 2016, at which time he was returned to L.D. At the compliance hearing held on February 18, 2016, L.D. was ordered to participate in family therapy with S.A. and to commence trauma focused therapy for him.

At the August 2, 2016 fact-finding hearing, the Division introduced its investigation summary (with hearsay redacted), and police photographs. L.D. testified in her defense. No other witnesses testified.

In an oral decision, Judge Johnson determined the Division proved "by a clear preponderance of the evidence" that mother "unreasonably inflict[ed] a substantial risk of harm on this child," had used excessive corporal punishment by hitting him with a [cord], and that her "behavior was intentional." After acknowledging S.A. was misbehaving in his new school and suffering from Attention Deficit Hyperactivity Disorder, the judge concluded:

> [I] do find that [defendant], on the day in question, did strike this child a number of times with a[n] extension cord. To the extent that [defendant's] testimony differs from what the [c]ourt has found, all findings to this

> point by a clear preponderance of the evidence, I find her testimony to not be believable based on my observations of her body language, facial expressions, and demeanor . . . and I find in this particular case, [defendant] did unreasonably inflict a substantial risk of harm on this child by inflicting . . . excessive corporal punishment, in violation of N.J.S.A. 9:6-8.2(1)(c)(4).

The judge also found the child's statements were corroborated by the documentary evidence, which he found credible.

After reviewing the photographs, Judge Johnson gave L.D. the "benefit of the doubt" regarding the marks on S.A.'s face. The judge described in explicit detail what was depicted in the photographs and found them probative to explain "a doubled-up cord striking [S.A] at that time." Equally important, the judge differentiated the bruises in the photographs, some showing "a deeper black and/or blue bruise and a fresher, red linear bruise" and another showing "a repetitive type picture". The judge disregarded "more pictures of that older bruise," and duplicative photographs as cumulative.

On appeal, defendant does not dispute that she hit S.A., but that she used a belt and not an extension cord. Notwithstanding, defendant contends that her conduct does not rise to the level of excessive corporal punishment, and that S.A. was not exposed to

imminent danger or substantial risk of harm. The Division and Law Guardian urge us to affirm the court's order.

## II.

Our task as an appellate court is to determine whether the decision of the family court is supported by substantial credible evidence in the record and is consistent with applicable law. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citation omitted). We owe particular deference to "the family courts' special jurisdiction and expertise . . . ." Id. at 413. Unless the judge's factual findings are "so wide of the mark that a mistake must have been made[,]" they should not be disturbed, even if we would not have made the same decision had we heard the case in the first instance. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of N. Am., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)). "It is not our place to second-guess or substitute our judgment for that of the family court, provided that the record contains substantial and credible evidence to support" the judge's decision. N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012) (citation omitted).

Through the admission of "competent, material[,] and relevant evidence," the Division must prove by a preponderance of the evidence that the child was "abused or neglected." N.J.S.A. 9:6-8.46(b). In pertinent part, Title 9 defines an "abused or neglected child" as a child under eighteen years of age:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment.
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

"Excessive corporal punishment" entails physical punishment that results in "bruises, scars, lacerations, fractures, or any other medical ailment suffered as a result of [a parent's] actions." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 36 (2011); see also Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 510-11 (App. Div. 2010) (citing N.J.A.C. 10:129-2.2, listing examples of abuse or neglect including "[c]uts, bruises, abrasions, [or] welts"). Judge Johnson concluded that "when you're hitting a child with a belt, I find that the physical, mental, and emotional condition was in imminent danger of becoming impaired . . . and I find that

8

A-1312-16T2

in this particular case, [L.D.] did unreasonably inflict a substantial risk of harm on this child . . . ."

Applying these standards, we affirm the trial court's finding of excessive corporal punishment. Although the judge found that S.A. did not require medical treatment and he was not "permanently injured," a court "need not wait to act until a child is actually irreparably impaired." N.J. Dep't of Children & Families, Div. of Youth & Families Servs. v. A.L., 213 N.J. 1, 23 (2013) (quoting In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999)). "In the absence of actual harm, a finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm." Ibid.; see N.J.S.A. 9:6-8.21(c)(4)(b). The language in N.J.S.A. 9:6-8.21(c)(4) concerning failure "to exercise a minimum degree of care" has been interpreted by our Supreme Court as referring to "conduct that is grossly or wantonly negligent, but not necessarily intentional" and "reckless disregard for the safety of others." Dep't of Children & Families, N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 305, 306 (2011).

Although it is clear that the phrase the lack of "minimum degree of care" implies more than simple negligence, it can apply to situations ranging from "slight inadvertence to a malicious purpose to inflict injury. Where an ordinary reasonable person would understand that a situation poses dangerous risks and acts

9

without regard for the potentially serious consequences, the law holds him or her responsible for the injuries" caused. <u>G.S. v. Dep't of Human Servs.</u>, 157 N.J. 161, 179 (1999) (citing <u>McLaughlin v. Rova Farms, Inc.</u>, 56 N.J. 288, 305 (1970)).

Conduct is considered willful or wanton if done with the knowledge that injury is likely to, or probably will, result. <u>McLaughlin</u>, 56 N.J. at 305. Because risks that are recklessly incurred are not considered unforeseen perils or accidents in the eyes of the law, actions taken with reckless disregard for the consequences also may be wanton or willful. <u>Ibid.</u>; <u>see also</u> <u>Egan v. Erie R.R. Co.</u>, 29 N.J. 243, 254-55 (1959). So long as the act or omission that causes injury is done intentionally, whether the actor actually recognizes the highly dangerous character of his or her conduct, is irrelevant. <u>G.S.</u>, 157 N.J. 161 at 178; <u>McLaughlin</u>, 56 N.J. at 305. Knowledge will be imputed to the actor.

We reject L.D.'s argument that Judge Johnson's decision is inconsistent insofar as he found S.A. was not "impaired" or "harmed", yet L.D. inflicted "excessive corporal punishment" exposing him to "substantial harm." The record reflects that L.D. was under considerable stress because of her advanced pregnancy, moving in with her mother, that she pushed S.A. after the party,

and threatened to beat him on the ride home, which she ultimately carried through with. She struck his bare buttocks at least four times with an extension cord, leaving visible marks. The judge found L.D.'s "behavior was intentional." Based upon the totality of the circumstances, the judge found substantial risk of harm to S.A. L.D. did not present any evidence at the hearing to exonerate her actions. See G.S., 157 N.J. at 177 (recognizing "Title 9's primary concern is the protection of children, not the culpability of parental conduct").

B.

We next address L.D.'s claim that the detective's interviews contained in the Division's investigation summary constituted inadmissible hearsay. The applicable statute, N.J.S.A. 9:6-8.46(4), authorizes admission of S.A.'s statements here because they were made to, and witnessed by, Division workers.

"[P]revious statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." Ibid. L.D.'s own statements to authorities admitting to whipping S.A. corroborate the child's account of the events. As such, we disagree with L.D.'s contention that S.A's statement was

uncorroborated. N.J. Div. of Child Protec. and Permanency v. J.A., 436 N.J. Super. 61, 67 (App. Div. 2014).

L.D. testified to rebut the report. The judge made credibility determinations based on her testimony. We cannot say, as L.D. contends, that the court's findings lacked support in the record.

C.

Turning to the last argument raised by L.D. for the first time on appeal, we do not find that she was denied due process during her interview with the police which led to her admission regarding her use of an extension cord. L.D. concedes that the caseworker conducted her own interviews following questioning by the detective thereby curing any hearsay concerns. L.D.'s trial counsel did not object to the investigation summary being moved into evidence after extensive redactions were made. A court may consider factual statements in the report that were made to Division staff personnel, if the statements were made based upon first-hand knowledge and made in the usual course of their duties. N.J. Div. of Child Prot. and Permanency v. N.T., 445 N.J. Super. 478, 487 (App. Div. 2016); see also N.J.R.E. 803(c)(6); N.J.S.A. 9:6-8.46(a)(3); R. 5:12-4(d). Such is the case here. We find no plain error.

L.D.'s remaining due process arguments lack sufficient merit to warrant further discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION