**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1882-23

DEVON COLLINS,
ADMINISTRATRIX OF THE
ESTATE OF SHANNON
FLOOD, DEVON COLLINS,
GUARDIAN AD LITEM FOR
SHEA LULLA, AN INFANT,

     Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT, NEW
JERSEY TRANSIT RAIL
OPERATIONS, INC., THE
HUDSON-BERGEN LIGHT RAIL,
21ST CENTURY RAIL
CORPORATION, AECOM
TECHNOLOGY CORPORATION,
WASHINGTON GROUP
INTERNATIONAL,
URS CORPORATION,
URS CORPORATION
WASHINGTON DIVISION, and
ALEXANDER BISHOP,

     Defendants-Respondents,

and

THE STATE OF NEW JERSEY,
THE CITY OF JERSEY CITY,
ITOCHU CORPORATION,
KINKISHARYO
INTERNATIONAL LLC,

Defendants.

Argued February 12, 2025 – Decided May 8, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-0134-21.

Alan T. Friedman argued the cause for appellant (Bagolie Friedman, LLC, and Eisbrouch Marsh, LLC, attorneys; Alan T. Friedman, Spencer A. Sink, and David Eisbrouch, of counsel and on the brief).

John W. Gregorek argued the cause for respondents (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; John W. Gregorek and Thomas C. Hart, of counsel and on the briefs).

Michael C. Shapiro argued the cause for amicus curiae New Jersey Association for Justice (Epstein Ostrove, LLC, attorneys; Michael C. Shapiro, of counsel and on the brief).

PER CURIAM

Plaintiff Devon Collins, as Administratrix of the Estate of Shannon Flood (decedent), and as Guardian Ad Litem for Shea Lulla, appeals from the trial

A-1882-23

court's February 5, 2024[1] order granting summary judgment in favor of defendants New Jersey Transit Corporation (NJT), Twenty-First Century Rail Corporation, AECOM Technology Corporation, Kinkisharyo International LLC, and Alexander Bishop (defendants).

In this matter, we are asked to address the contours of the immunities provided to railroads under N.J.S.A. 48:12-152. We conclude the railroad was not entitled to immunity under the facts presented here, where decedent was struck while using a pedestrian crossing as permitted under N.J.S.A. 48:12-152(a), and that the immunity provision set forth in N.J.S.A. 48:12-152(b)(5) is not applicable. Moreover, even if subsection (b)(5) were implicated, decedent was using the crossing as intended, and therefore, the railroad was not entitled to immunity. Accordingly, we reverse the order of summary judgment and remand for further proceedings in accordance with this opinion.

I.

On December 24, 2019, decedent was killed when she was struck by a light rail train after entering a designated pedestrian crossing over NJT's railroad track for the Hudson Bergen Light Rail (HBLR) at the intersection of Hudson

---

[1] The court, at plaintiff's request, vacated the February 5 order and entered an amended order dated February 14 clarifying the case was dismissed based on the immunity provisions set forth in N.J.S.A. 48:12-152.

A-1882-23

and York Streets in Jersey City. The incident was captured on multiple video cameras on the train, and at the Exchange Place Station, as the train approached.

The train tracks at issue run adjacent to Hudson Street and are located on NJT's dedicated railroad right of way for the HBLR. The crossing for pedestrians and vehicles going over the right of way and Hudson Street is controlled by pedestrian signals and traffic lights.

Decedent worked across the street from the accident location. On the day of the incident, she was seen walking through the intersection approximately five minutes prior to the accident using the same pedestrian crossing at issue. The train, operated by Bishop, was scheduled to arrive at the Exchange Place Station at 4:34 p.m., which was approximately twenty-five seconds after the accident. Prior to the collision, the train was heading north, and decedent was seen walking in the same direction on the sidewalk adjacent to the tracks.

As the train approached the pedestrian crossing, it had the "proceed signal" and the right of way to proceed through the crossing. Approximately seven seconds prior to impact, Bishop sounded the train's horn because he saw decedent walking on the sidewalk approaching the crossing. As the train approached the crosswalk, decedent turned to her left, towards the track, and entered the crossing approximately two seconds before being struck by the train.

A-1882-23

Bishop applied the brakes one second prior to impact. It is undisputed decedent was in the railroad crossing at the time of impact.

Plaintiff asserts operators of HBLR trains are only permitted to use their horn in cases of emergency or to prevent an accident. Plaintiff alleges that immediately after Bishop sounded his horn, he accelerated the train. Defendants argue decedent never looked to see if a train was coming as she walked into the crosswalk and that the pedestrian signal indicated she was not permitted to cross.

Plaintiff filed a complaint in January 2021 against NJT, the State of New Jersey, the City of Jersey City, Twenty-First Century Rail Corporation, AECOM Technology Corporation, Itochu Corporation, and Kinkisharyo International LLC, seeking damages under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6, and the Survivor's Act, N.J.S.A. 2A:15-3.[2] Bishop was later added as a defendant. The complaint contained seven counts alleging, among other theories of recovery, negligent operation of the light rail train.

After defendants answered the complaint, the parties engaged in discovery. In December 2023, defendants moved for summary judgment

[2] Plaintiff dismissed the State of New Jersey without prejudice in April 2021. In July 2021, the court dismissed the complaint against defendant Itochu Corporation without prejudice pursuant to Rule 1:13-7.

seeking to dismiss plaintiff's claims, asserting immunity under N.J.S.A. 48:12-152.[3]  Plaintiff opposed defendants' motion.

On February 2, 2024, the court heard oral arguments.  Defendants argued they were entitled to immunity under N.J.S.A. 48:12-152 because plaintiff was not using the crosswalk as intended.  They argued the crosswalk was not on a public highway and was thus railroad property.  They also argued NJT owns a "real property interest, vis-à-vis their right[]of[]way, whether . . . an easement or a covenant," and "a right[]of[]way is a property interest."

The trial court ruled that N.J.S.A. 48:12-152(a) did not "prohibit somebody from using a crossing . . . established by a railroad," and the statute was meant "to keep the trespassers out."  The court found subsection (b) "deals with liability for people that are on railroad property" and explained:

> [I]f you read [subsection (a)] it deals with prohibiting people from using railroad property, or any right[]of[]way of any railroad.  [Subsection (a)] brings . . . both [(a) and (b)] together.  You can't walk on the right[]of[]way, you can't walk on property owned by a railroad, except you could use a crossing, or where we intend you to be.  So now that's only dealing with trespassing.

---

[3]  In January 2024, Jersey City also moved for summary judgment, asserting it did not own or control the crossing and that NJT "owned[,] maintained[,] and controlled" the crossing.  Plaintiff did not oppose Jersey City's motion, and it was subsequently granted.  That order is not before us on appeal.

[Subsection (b)] then deals with those who are utilizing the property of the railroad. It's part of the same statute . . . . The only logical way to read it is [subsection (b)] then [is] trying to clarify [subsection (a)] which applies on its face to property owned by a railroad and rights[]of[]way. And maybe it could've been phrased a little bit better in [subparagraph (b)(5)]. But I think when [subsection (b)(5)] say[s] "[u]sing the property of any railroad in a manner in which it [i]s not intended to be used . . . ," they're trying to clarify the permission that they're giving in [subsection (a)]. And [subsection (a)] on its face applies to right[s]of[]way[].

. . . [T]he right[]of[]way is involved here, at a minimum . . . . [D]efendant is arguing it's clear from this motion record [they] absolutely have ownership of that crossing walk area, it's not part of the public property. I'm not even going to go there. I'm finding at a minimum, even if it's only a right[]of[]way, then [subsection (b)(5)] applies to [plaintiff's] conduct . . . . That's the only way . . . [subsections (a) and (b)], which are intended to be read together, . . . make any sense. Otherwise you could . . . be drunk . . . , stumble on this crosswalk in violation of huge blinking red lights, . . . and get killed by [a] train and then say it was only a crosswalk you only had the right[]of[]way so I can sue, [subsection (b)] doesn't apply to prevent me from suing. That's a ridiculous reading of the statute.[4] This [c]ourt will not do that. I'm going to grant the motion based upon . . . the immunities as to all railroad[] companies, under N.J.S.A. 48:12-152 . . . .

---

4   The court overlooked that N.J.S.A. 48:12-152(b)(1) specifically provides immunity to the railroad when an individual comes in "contact with any equipment . . . or rolling stock of any railroad, if death or injury occurred while that person was: (1) under the influence of alcohol . . . by a blood alcohol concentration [(BAC)] of 0.10% or higher."

A-1882-23

The court went on to state:

> When it says using the property of any railroad in [subsection (b)(5)], I . . . construe that logically as conjunctive with [subsection (a)] . . . . [T]o say that someone can use the railroad property the way it was not intended to be used and clearly and openly in violation of posted regulations, and yet still sue the railroad company because [one is] only on the right[]of[]way of the railroad as opposed to the technical property owned by a railroad . . . I can't believe that the [L]egislature would've intended that to proceed.

The court subsequently entered an order granting defendants' motion and dismissed plaintiff's complaint with prejudice based on the immunity provisions in N.J.S.A. 48:12-152.

## II.

On appeal, plaintiff argues the trial court erred in its statutory interpretation of N.J.S.A. 48:12-152 because it considered the terms railroad "property" and railroad "right of way" as interchangeable. She contends N.J.S.A. 48:12-152 was intended to protect railroads from lawsuits filed by trespassers, not from individuals legally within crossings established by railroads. She also asserts that even if N.J.S.A. 48:12-152(b)(5) is controlling, the trial court improperly granted summary judgment because there are genuine issues of material fact in dispute.

8

"We review a trial court's grant of summary judgment de novo, applying the same standard as the trial court." Hyman v. Rosenbaum Yeshiva of N. Jersey, 474 N.J. Super. 561, 572 (App. Div. 2023). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

"We review questions of statutory interpretation de novo." Libertarians for Transparent Gov't v. Cumberland Cnty., 250 N.J. 46, 55 (2022). "When interpreting a statute, [the] aim [is] to effectuate the Legislature's intent, which is best indicated by the statutory text." Keyworth v. CareOne at Madison Ave., 258 N.J. 359, 379 (2024) (citations omitted). See also DiProspero v. Penn, 183 N.J. 477, 492 (2005) ("The Legislature's intent is the paramount goal when interpreting a statute and, generally, the best indicator of that intent is the statutory language."). "In construing statutory text, 'words and phrases shall be

A-1882-23

given their generally accepted meaning, unless that meaning is inconsistent with the clear intent of the Legislature or unless the statute provides a different meaning. Words in a statute should not be read in isolation.'" Keyworth, 258 N.J. at 379-80 (quoting Shelton v. Restaurant.com, Inc., 214 N.J. 419, 440 (2013)).

Accordingly, courts are to "read the statute[] in [its] entirety and construe each part or section . . . in connection with every other part or section to provide a harmonious whole." C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459-60 (2014) (quoting State v. Marquez, 202 N.J. 485, 499 (2010)). "If the text's plain meaning is clear and unambiguous, 'we apply the law as written.'" Keyworth, 258 N.J. at 380 (quoting State v. J.V., 242 N.J. 432, 443 (2020)) (internal quotation marks omitted). "Conversely, if the text is ambiguous, 'we may turn to extrinsic evidence, including legislative history to aid our inquiry.'" Ibid. (quoting W.S. v. Hildreth, 252 N.J. 506, 518 (2023)). See also DiProspero, 183 N.J. at 492-93 ("[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004))).

By way of background, railroads have been accorded statutory immunity in this state since 1869. See Egan v. Erie R.R. Co., 29 N.J. 243, 247-48 (1959) (recounting the history of N.J.S.A. 48:12-152 as it stood in 1959, stating "[t]his statute had its origin in 1869. L. 1869, c. 285, p. 806. It was enacted in virtually the [same] language as part of the General Railroad Law in 1903, L. 1903, c. 257, § 55, and re-enacted in its [pre-1998 amendments] form in the general revision of the New Jersey Statutes in 1937"). The 1937 version of the statute provided:

> It shall not be lawful for any person other than those connected with or employed upon the railroad to walk along the tracks of any railroad except when the same shall be laid upon a public highway.
>
> Any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion shall be deemed to have contributed to the injury sustained and shall not recover therefor any damages from the company owning or operating the railroad. This section shall not apply to the crossing of a railroad by a person at any lawful public or private crossing.
>
> [Id. at 247 (quoting N.J.S.A. 48:12-152 (1937)).]

N.J.S.A. 48:12-152 was amended in 1998 in response to a series of cases beginning with Renz v. Penn Central Corp., 87 N.J. 437 (1981), and culminating in Ocasio v. Amtrak, 299 N.J. Super. 139 (App. Div. 1997). When the first

11

railroad immunity statute became law in 1869, it merely codified the common law of New Jersey that a landowner owed no duty to a trespasser other than to refrain from willful and wanton conduct. Egan, 29 N.J. at 250. Years later, in Egan, the plaintiffs contended that the statute had become an anachronism, as courts had by then restricted the prior common law policy of a landowner's duty to trespassers in a variety of ways, leaving the statute "isolated" within our premises liability law. Id. at 251-52. Our Supreme Court rejected the argument, holding the Legislature had "solidified the common law in effect at the time of the [statute's] enactment as it related to trespassers upon the rights of way of railroads," and the evolution of the common law in the area provided no basis "to encroach upon a field where the Legislature has spoken." Id. at 252.

More than twenty years later, in Renz, our Supreme Court read the statutory history differently. The Renz Court concluded the Legislature had intended to predicate the railroads' statutory immunity on the common law doctrine of contributory negligence and not trespass. 87 N.J. at 448. Contributory negligence, however, had been abrogated in New Jersey by the Legislature in 1972 when it adopted the Comparative Negligence Act. N.J.S.A. 2A:15-5.1 to -5.8.

In order to resolve the apparent conflict between the railroad immunity statute and the Comparative Negligence Act, the Court infused the doctrine of comparative negligence into the railroad immunity statute. Renz, 87 N.J. at 459-60. Accordingly, after Renz, the railroads no longer enjoyed complete immunity from claims of injured trespassers and instead were only absolved of liability if they could prove that the plaintiff's negligent contribution to his own injuries exceeded that of the railroad's. Id. at 460-61. This court subsequently applied Renz in two cases, holding that the railroads owed trespassers a duty of reasonable care under all surrounding circumstances. Boyd v. Conrail, 291 N.J. Super. 608, 618-19 (App. Div. 1996); Ocasio, 299 N.J. Super. at 150-51.

Following this court's opinion in Ocasio, the Legislature amended the railroad immunity statute in 1998, restoring to railroads the absolute immunity from claims of trespassers they had enjoyed before Renz, except as to minors, including railroad officers and employees within the protections of the statute, extending the statute's definition of trespass,[5] and expressly repudiating application of the Comparative Negligence Act to railroad trespassers.

---

[5] The statute previously applied only to those persons injured by "an engine or car while walking, standing or playing on a railroad." N.J.S.A. 48:12-152 (1937). The amended statute applies to anyone "com[ing] into contact with any equipment, machinery, wires or rolling stock of any railroad." N.J.S.A. 48:12-

The Legislature in 1998 did as the <u>Renz</u> Court suggested it could and adopted an approach under subsection (a) focusing on whether the plaintiff was unlawfully within the right of way. <u>Renz</u>, 87 N.J. at 445 ("If the Legislature, in enacting the railroad immunity statute, had wanted to adopt an approach focusing upon the presence or absence of landowner duty, and to codify a rule of no duty to trespassers, it could very well have done so simply by relating the statute to the status of the plaintiff vis-à-vis the property of the railroad."). The Legislature also addressed specifically prohibited conduct in enacting subsection (b).

In its current form, N.J.S.A. 48:12-152, titled "[p]rohibition on entering upon the right of way of a railroad or coming into contact with equipment, machinery, wires, or rolling stock of railroad; restrictions on recovery for injury or death," provides for immunity granted to railroads in this state. N.J.S.A. 48:12-152(a) states:

> No person other than those . . . employed upon the
> railroad . . . shall enter upon the right of way of any

152(a). Thus the amendment effectively abrogated the holding in <u>Jasiczek v. Pennsylvania Railroad</u>, as it relates to adult trespassers. 90 N.J. Super. 380, 383-84 (App. Div. 1966) (holding former N.J.S.A. 48:12-152 does not apply to a plaintiff injured by overhead high-voltage wire while trespassing on railroad right of way as the former version spoke "in terms of an injury by an engine or car").

railroad or come into contact with any equipment, machinery, wires or rolling stock of any railroad. This section shall not prohibit a passenger for hire from utilizing those parts of a railroad particularly intended for passenger use nor shall it prohibit a person from using a crossing established by the railroad.

N.J.S.A. 48:12-152(b), in relevant part, provides:

No person shall recover from the company owning or operating the railroad or from any officer or employee of the railroad, any damages for death or injury to person or property as a result of contact with any equipment, machinery, wires or rolling stock of any railroad, if death or injury occurred while that person was:

(1) under the influence of alcohol . . . by a [BAC] of 0.10% or higher . . . ; or

(2) under the influence of drugs, other than drugs medically prescribed . . . and used in the manner prescribed; or

(3) engaging in conduct intended to result in personal bodily injury or death; or

(4) engaging in conduct proscribed by subsection a. of this section; or

(5) using the property of any railroad in a manner in which it was not intended to be used or in violation of posted regulations.

In the absence of proof to the contrary, any person injured while attempting to board or disembark from a moving train shall be presumed to have used the

15

property in a manner in which it was not intended to be used.

This subsection shall apply notwithstanding the provisions of P.L.1973, c. 146 ([N.J.S.A.] 2A:15-5.1 et seq.).

(c) This section shall not preclude recovery for injury or death of a person who was, at the time of the injury, less than 18 years of age.

Plaintiff asserts we must interpret immunity statutes narrowly, rather than broaden their applicability. See Cohen v. W.B. Assocs., Inc., 380 N.J. Super. 436, 441 (App. Div. 2005). She further contends the trial court erred in relying on subsection (b)(5) to find immunity because the court mistakenly conflated the terms "right of way" and "property" as used in N.J.S.A. 48:12-152. She argues subsection (a) does not include the word "property," and had the Legislature intended subsection (a) to apply to railroad "property," it would have included that language. Thus, plaintiff maintains a plain reading of the statute shows subsection (a) applies only to railroad rights of way, and not railroad property.

Plaintiff further contends subsection (b)(4) provides a violation of subsection (a) can only occur on a railroad right of way, and a railroad is immune from suit for violations of subsection (a), with the exception of persons using a crossing established by the railroad. She argues that because decedent was in

the crossing at the time of the accident, defendants cannot be immune under subsection (b)(4).

Plaintiff argues subsection (b)(5) is, like (b)(4), specific to location, and pertains to the "property" of any railroad, and "property" refers to railroad real property, such as a yard or maintenance facility. She contends that because decedent was not using "the property of the railroad" when she was struck by the train—rather she was on a right of way and was using the crossing as permitted under subsection (a)—the court erred in finding defendants were entitled to immunity.

Plaintiff asserts decedent was not engaging in "prohibited behavior" as she was in a crossing established by the railroad, and the Legislature "did not intend N.J.S.A. 48:12-152 to immunize a railroad from negligence for hitting a person who is walking in a crosswalk." Lastly, plaintiff argues that even if subsection (b) of the statute is read such that decedent was using the "property" of the railroad when crossing the street, there are disputed issues of material fact regarding whether decedent was using the property in a manner not intended or in violation of posted regulations. Plaintiff asserts decedent was using the property "exactly" as expected and a jury should determine if there were any "posted regulations" which decedent violated.

Defendants counter the trial court correctly found they were entitled to immunity under N.J.S.A. 48:12-152 because decedent "impermissibly entered onto NJT's railroad crossing and right of way and used the crossing in a manner in which it was not intended to be used." Defendants cite to subsections (b)(4) and (b)(5) to assert that N.J.S.A. 48:12-152

> acts as a complete bar to all claims for injuries or death caused by contact with a train while the person was wrongfully present on 'the right of way of any railroad' or 'using the property of any railroad in a manner in which it was not intended to be used or in violation of posted regulations,' regardless of whether the railroad may also have been negligent.

Defendants contend there is no issue of fact preventing the grant of summary judgment. Defendants rely on N.J.S.A. 1:1-2, which states unless "otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute . . . shall have the meaning herein given to them." N.J.S.A. 1:1-2 defines "property" as, "unless restricted or limited by the context to either real or personal property, includes both real and personal property." Lastly, defendants argue decedent misused the right of way as a matter of law because she did not look to see if a train was coming and crossed against the light.

Amicus curiae New Jersey Association for Justice (Amicus) argues N.J.S.A. 48:12-152 was never intended to immunize railroads when a pedestrian is struck at a crossing where the operator could likely have avoided the accident merely because the "Do Not Cross" signal may have been active. Rather, the statute was intended to immunize railroads from claims of trespassers, and the trial court's decision "represents a harsh expansion of the immunities afforded by the Act." Amicus asserts the statute's concept of "property" was never meant to include the crossing itself or the conduct at issue. It argues that crossing when not indicated is not the sort of conduct that would warrant an absolute bar to recovery. It notes the operator blew the train's horn in violation of established policy, failed to brake in a timely manner and, in fact, accelerated as he approached the intersection. Accordingly, it asserts this case is not about reaction time, and a jury could reasonably conclude the operator allowed the tragedy to unfold as he approached the crossing. It maintains the act of crossing when not indicated is not the kind of "culpable conduct like being suicidal, trespassing, or disembarking from a moving train that would warrant an absolute bar to recovery."

Amicus contends the prior version of N.J.S.A. 48:12-152 was used to formulate the current version of the statute. The first and third sentences of the

19

prior statute essentially became subsection (a), and the second sentence of the predecessor statute became subsection (b) with some additional changes. It argues that in the current version, subsection (b)(4) bars recovery for trespass, and the intent of (b)(5) was to maintain the prior version's immunity against the claims of "any person injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion." N.J.S.A. 48:12-152 (1937).

Amicus avers the term "property" in subsection (b)(5) refers to the list of tangible property in subsection (a), namely, "equipment, machinery, wires or rolling stock of any railroad." N.J.S.A. 48:12-152(a). It argues if the term "property" included the crossing itself, subsection (b)(5) would be futile. Amicus stresses "courts 'must avoid an interpretation that renders words in a statute surplusage.'" Johnson & Johnson v. Dir., Div. of Tax'n, 244 N.J. 413, 422 (2020) (LaVecchia, J., dissenting) (quoting Shelton, 214 N.J. at 440). It posits the current version of N.J.S.A. 48:12-152 expressly expanded the Act by creating "three new immunities" in subsections (b)(1), (b)(2), and (b)(3), and if the Legislature wanted to limit the crossing exception or expand the concept of misuse, it would have done so expressly.

Amicus contends contributory negligence has never been a bar where it is credibly alleged the railroad operator could have avoided the collision. It points to our Supreme Court's decision in Jelinek v. Sotak, which recognized under the prior version of N.J.S.A. 48:12-152, a railroad's duty

> to use reasonable care to so operate the train as it approaches a grade crossing with due regard to its right of way, as to protect travelers . . . [e]ven as to those who in disregard of due care may attempt to cross the tracks in the face of an oncoming train or to one whose vehicle may be stalled or stopped on the tracks . . . .
>
> [9 N.J. 19, 23 (1952).]

Amicus also relies on Webb v. West Jersey & Seashore Railroad Co., where the plaintiff turned off a public road onto "a private road belonging to the railroad company" to reach the railroad station. 100 N.J.L. 204, 205 (Sup. Ct. 1924). The private road intersected with train tracks at an established crossing, and the plaintiff's car was struck while utilizing said crossing. Ibid. The Court held the railroad company, even though its engine bells were ringing, was under a duty "to use reasonable care to so operate the train as it was approaching the crossing as to protect persons who, in the exercise of due care, were about to cross the tracks." Id. at 206. The Court noted it was for a jury to decide whether the plaintiff was careless in "not appreciating . . . the ringing of the bell" or in

failing to heed the warnings of the brakemen of the approaching danger. Id. at 207.

We conclude the word "property" as used in N.J.S.A. 48:12-152(b)(5) applies to the tangible property specifically described in N.J.S.A. 48:12-152(b), which includes "equipment, machinery, wires or rolling stock" and does not include the crossing as set forth in subsection (a). "Words in a statute should not be read in isolation." Keyworth, 258 N.J. at 379-80 (quoting Shelton, 214 N.J. at 440). "Thus, 'we read . . . statutes in their entirety and construe each part or section . . . in connection with every other part or section to provide a harmonious whole.'" Id. at 380 (quoting C.A., 219 N.J. at 459-60).

Moreover, we "tradition[ally] . . . giv[e] 'narrow range' to statutes granting immunity from tort liability because they leave 'unredressed injury and loss resulting from wrongful conduct.'" Velazquez v. Jiminez, 172 N.J. 240, 257 (2002) (quoting Harrison v. Middlesex Water Co., 80 N.J. 391, 401 (1979)). Therefore, we discern that the immunity afforded under N.J.S.A. 48:12-152 is not applicable under the facts of this case.

N.J.S.A. 48:12-152(a) prohibits individuals from entering "upon the right of way of any railroad" or coming "into contact with any equipment, machinery, wires or rolling stock of any railroad," but it specifically allows an individual to

use "a crossing established by the railroad." N.J.S.A. 48:12-152(b) identifies when a railroad is entitled to immunity. It notes a person cannot recover damages stemming from the individual coming into contact with "equipment, machinery, wires or rolling stock of any railroad," if any of the provisions set forth in subsections (b)(1) through (5) are demonstrated. At issue here is subsection (b)(5), which shields the railroad from liability to a person "using the property of any railroad in a manner in which it was not intended to be used or in violation of posted regulations." (Emphasis added). We interpret the reference to "property" in subsection (b)(5) as comprising the tangible property specifically referenced in subsection (b).

The reference to specific tangible property in the preceding sentence of the statute gives meaning to "property" as set forth in subsection (b)(5). There would be no need to set forth the specific types of property in subsection (b) if "property," as discussed in (b)(5), was meant to include both tangible and real property. Rather, the statute could have simply stated no individual shall recover as a result of any injury from "contact with any railroad property."

Moreover, construing subsection (b)(5) to mean the use of tangible property is consistent when read in conjunction with the portion of the statute that immediately follows subsection (b)(5) which provides, "[i]n the absence of

A-1882-23

proof to the contrary, any person injured while attempting to board or disembark from a moving train shall be presumed to have used the property in a manner in which it was not intended to be used." The property referenced in that sentence similarly refers to the equipment, machinery, or rolling stock of the railroad. Here, decedent was not "using" the property ("equipment, machinery, wires or rolling stock") of the railroad when she was struck by the train as contemplated by subsection (b)(5) of the statute.

N.J.S.A. 48:12-152(a) deals with an individual coming into contact with the equipment, machinery, wires, or rolling stock of the railroad upon entering the railroad's right of way. In those circumstances, an individual shall not enter the right of way of any railroad and come into contact with this equipment except, among other reasons, if they are "using a crossing established by the railroad." Accordingly, decedent was not prohibited from entering the crossing.

Even if we assume that the term "property" as used in N.J.S.A. 48:12-152(b)(5) encompassed the crossing, we are satisfied decedent was not using the property "in a manner in which it was not intended." In adopting N.J.S.A. 48:12-152(b)(5), the Legislature did not provide that a railroad was entitled to immunity if a plaintiff "was in any way negligent" in using the railroad's property. Rather, it barred recovery if the property was utilized in a "manner in

24

which it was not intended to be used." N.J.S.A. 48:12-152(b)(5). Here, decedent was utilizing the crosswalk as intended—to cross the street—even if there was negligence on her part. Her alleged failure to make proper observations does not equate with her using the crossing in a manner in which it was not intended.

"The Legislature is presumed to be familiar with its existing enactments and is presumed to intend that its newer enactments be harmonized with the existing ones, in light of the Legislature's purpose." Correa v. Grossi, 458 N.J. Super. 571, 580 (App. Div. 2019). We assume the Legislature here understood how to utilize the word "negligence" as the term is ubiquitous throughout our civil code. That the Legislature chose not to use the term negligence here in subsection (b)(5), but rather the phrase "in a manner in which it was not intended to be used," is significant because it requires a fundamentally different analysis.

The trial court appeared to equate negligence with using the crosswalk "in a manner in which it was not intended to be used" and determined because decedent was negligent in entering the crossing, that immunity automatically applied. We reject that interpretation of the statute. Decedent was not using the property in a "manner in which it was not intended to be used." N.J.S.A. 48:12-152(b)(5). Rather, decedent was using the property as intended, even if she was doing so in a negligent manner.

Defendants rely on <u>Jelinek</u> for the proposition that "[t]here is nothing in [the] language [of the 1937 version of N.J.S.A. 48:12-152] that requires an engineer to stop a train merely because of the possible danger of a collision." 9 N.J. at 23. That is correct, but our Supreme Court further noted:

> There are reciprocal rights and duties involved. The engineer can rightfully assume that travelers in the exercise of due care with due regard to the railroad's right of way, will not attempt to cross the tracks. But if in the exercise of reasonable diligence it should become apparent that the traveler in disregard of due care or the railroad's right of way will or is attempting to cross the crossing before the train so that a collision will probably result, then from that point on the engineer must with all reasonable care and diligence attempt to stop the train. If he does so then there is no negligence.
>
> [<u>Ibid.</u>]

The Court further observed:

> The duty resting upon a railroad is to use reasonable care to so operate the train as it approaches a grade crossing with due regard to its right of way, as to protect travelers who in the exercise of due care are about to cross the tracks and whether it discharged its duty under all the facts and circumstances is usually a matter for the jury to determine. Even as to those who in disregard of due care may attempt to cross the tracks in the face of an oncoming train or to one whose vehicle may be stalled or stopped on the tracks the duty of reasonable care and diligence still rests on the railroad.
>
> [<u>Ibid.</u>]

A-1882-23

Although, <u>Jelinek</u> was decided prior to adoption of the revised version of N.J.S.A. 48:12-152, the same principles apply, under the new statute, as articulated by the Court. That is, merely because an individual enters a crossing "in disregard of due care," a duty still rests on the railroad to "use reasonable care . . . as it approaches a . . . crossing with due regard to its right of way, as to protect travelers." <u>Ibid.</u>

We are satisfied the term property as set forth in subsection (b)(5) means tangible property as set forth in subsection (b)—"equipment, machinery, wires or rolling stock of any railroad." Because decedent was not using any of this property when she was injured, subsection (b)(5) does not apply. Rather, we must look to subsection (b)(4), which would apply if decedent was engaging in any proscribed conduct under subsection (a). However, she was not a trespasser upon any railroad right of way. Rather, she was specifically permitted to utilize the "crossing established by the railroad." Therefore, subsection (b)(4) would also not provide immunity for the railroad.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

27